BUYS *v.* HANCHETT.

SPECIFIC PERFORMANCE—CONTRACT FOR PLATTING LAND TOO IN-DEFINITE TO BE SPECIFICALLY ENFORCED.

A contract providing for the platting of land and a division of the profits, but giving no interest in the land itself, making no provision for the expense incident to platting, and fixing no time therefor, was incapable of being specifically enforced by the courts.

Appeal from Kent; Brown (William B.), J. Submitted April 3, 1928. (Docket No. 10, Calendar No. 33,535.) Decided June 4, 1928.

Bill by James Buys and another against Benjamin S. Hanchett and another for specific performance of a land contract. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Elvin Swarthout,* for plaintiffs.

*Ward & Strawhecker,* for defendants.

SHARPE, J. There is much dispute over the facts in this case. It is not, perhaps, to be wondered at,

as the transaction giving rise to this suit occurred in the year 1912.    As evidenced by the writings introduced, they disclose that in that year there were some negotiations between William H. Kinsey and the defendant Hanchett looking to the purchase of some land outside the city limits of Grand Rapids, near to or abutting on the line of a proposed interurban road between Grand Rapids and Kalamazoo.    Mr. Kinsey and James Buys were at that time engaged in the real estate brokerage business in Grand Rapids.    Mr. Hanchett was then the general manager of the Grand Rapids Railway Company.    Buys secured an option to purchase this land, and that option was afterwards exercised and a deed of the land, at Hanchett's request, was made to one of his relatives and afterwards conveyed to him.    He thereafter paid the taxes on the land, farmed it at a loss, and still owns it.    The purchase price was $10,412.80.

It is the claim of Kinsey that at the time the deed was made there was an agreement between himself and Hanchett that he should plat the land and sell it and that the net profits should be divided between them. He claims to have secured the services of Jacob Steketee, an attorney of Grand Rapids, to prepare such a contract.    It was drawn and executed by Kinsey and by Hanchett, by Steketee, his attorney.    Hanchett denies that Steketee had any authority to so execute it.    It may be noted that, while Steketee was sworn as a witness, neither counsel inquired as to his authority in that respect.    A duplicate of the contract was mailed to Hanchett, but he claims not to have seen it until several years thereafter, when it was discovered among his papers.

The material parts of this agreement are as follows:

"It is hereby agreed, that if the purchase of said lands, or any portion thereof shall be consummated and title be obtained in said Elsie M. Martin, that said lands shall be subdivided and that the second party

shall be the sole agent for the sale thereof, in such manner and at such price as the parties hereto shall later agree upon.    And that after the purchase price paid for said lands, together with interest at the rate of six per cent. per annum from the date of purchase, and taxes and all other natural carrying expenses have been repaid to the first party, his heirs or assigns, from the sale of said lands, the remaining moneys received from the sale of said lands shall be divided equally between the said parties hereto, or their respective heirs and assigns.

"In further consideration of the division of the profits to be derived from the sale of said lands, the second party shall give and render his services and attend to all matters necessary pertaining to the sale thereof without further compensation."

When asked by counsel for plaintiff, "And do you recall where the data for the contract were made?" Kinsey testified:

"Oh, I think Jake (Steketee) and I went over that a couple times.    I told him what the arrangement was between Mr. Hanchett and myself personally in regard to Mr. Hanchett."

On being further interrogated as to their agreement, he testified:

"Mr. Hanchett said if we could buy the property he would pay for it and we would plat it and sell it and that we were to allow him six per cent., I am not so positive about that now.    I think the contract speaks for itself, but we were to divide the property share and share alike, Kinsey & Buys half and he half.    That is about all I recall now."

He further testified that when Steketee presented the contract to him "it didn't satisfy" him; that he "found a little fault" with it, and that he "had some talk with Mr. Steketee about things that didn't just suit me in the contract."

It is apparent from the proofs that the land did not soon thereafter become valuable for the purpose for which it was purchased.    On July 6, 1915, Hanchett

executed an option to sell it to Kinsey for $16,244.80. A letter written by Hanchett's secretary indicates that Kinsey could retain $2,000 for himself.

Plaintiffs, to whom Kinsey assigned his interest, here ask for specific performance. From a decree dismissing their bill, plaintiffs appeal.

Assuming, but not deciding, that the written agreement and this testimony were admissible, we feel forced to the conclusion that a contract which could be specifically enforced was not established. It is clear that no interest in the land purchased passed to Kinsey. *Sharp* v. *Richardson*, 239 Mich. 639. A division of the profits only was provided for. The lands were to be subdivided, but no provision was made for the expense of platting or other outlay incident thereto. No time was fixed when such work should begin. Kinsey and the plaintiffs waited 11 years before suggesting that platting should be done and the lots placed on the market, and then it was apparent to them that the property could not be sold without improving the streets. It was insisted that Hanchett should bear this expense, although he had not contracted to do so. Had Hanchett sought specific performance, it seems clear that there was no sufficient undertaking on the part of Kinsey capable of being specifically enforced by the courts.

The decree is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.